# STATE OF CONNECTICUT *v.* DONNETTE GRANT
## (AC 20642)

Landau, Dranginis and Hennessy, Js.

Argued November 28, 2001—officially released February 19, 2002

*Richard S. Cramer*, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rosita M. Creamer*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Donnette Grant,[1] appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and risk of injury to a child in violation of General Statutes § 53-21.[2] On appeal, the defendant claims that the trial court improperly (1) denied her right to call her prior attorney as a witness to her police interrogation and (2) expanded the charges against her when it explained during the jury instruction on recklessness that the standard of conduct of a reasonable person included "declining to do what a reasonably prudent person would not do," when such language was not included in the information. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Lennox Walker, the victim's father, arranged for the defendant to care for the victim, Lamar Walker, who was four months old. Kerry Ann Douglas, the victim's mother, took the victim to the defendant's apartment on the morning of August 12, 1994. Approximately two hours after the victim was left in the defendant's care, the victim required hospitalization because he was not breathing.

At 11:18 a.m., a police certified dispatcher received a 911 call from 887 Asylum Avenue in Hartford, the

---

[1] In the defendant's brief, her first name is spelled Donette. In the record and transcript, however, her first name is spelled Donnette. In the interest of conformity, we adopt the spelling in the record and transcript.

[2] The defendant was found not guilty of count one, manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), and count three, tampering with a witness in violation of General Statutes § 53a-151.

location of the defendant's apartment. Emergency personal responded and found that the victim was not breathing, had no pulse, and was cold, pale and blue from lack of oxygen in his blood. The paramedics transported the victim to Saint Francis Hospital and Medical Center. Because of the victim's special needs at that time, he was taken by Life Star helicopter to Hartford Hospital, which has an intensive care unit specially designed for very young children. Medical examination of the victim revealed that he had sustained the following injuries: Severe swelling of the brain, bleeding in the head, retinal hemorrhage and fractures in five bones. On August 14, 1994, the victim died at the hospital from the injuries he had sustained.

During the state's case, Detective Keith Knight of the Hartford police department testified that he interviewed the defendant twice at police headquarters, once on August 13, 1994, and again on August 16, 1994. The defendant's attorney, Ronald D. Peikes, was present at the August 16, 1994 interview. Additional facts will be set forth as necessary.

I

The defendant first claims that the court's order excluding Peikes' testimony violated her right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States constitution. Specifically, the defendant argues that the court improperly excluded, as irrelevant, Peikes' testimony regarding the "general atmosphere that surrounded [her police] interview."

The following additional facts are relevant to our resolution of the defendant's claim. During trial, both Knight and the defendant testified about the conversation and events that took place during the August 16, 1994 interview. Knight testified that there was no confusion on the part of the defendant regarding the questions

and answers that occurred during the interview. The defendant testified that she was very nervous when she spoke to the police, and was made more nervous when Knight kept tapping his pen on the table and "stomping" his feet on the floor. She did not testify, however, that she was confused by the questions asked during the interview.

On appeal, she now claims that Knight's behavior caused her to become confused and prone to misspeak in her recitation of the facts. She further claims that Peikes' testimony would have refuted Knight's testimony, thereby adding to the credibility of her testimony and, therefore, it was relevant evidence that should not have been excluded. Moreover, she claims that the exclusion resulted in reversible error. We disagree.

Before addressing the defendant's claim, we first note the applicable law and standard of review. "The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 668, 735 A.2d 267 (1999). "The determination of whether a matter is relevant to

a material issue or is collateral generally rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Hall*, 66 Conn. App. 740, 757, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002).

"It is well established that [t]he trial court has broad discretion in ruling on the admissibility of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Claveloux* v. *Downtown Racquet Club Associates*, 246 Conn. 626, 628, 717 A.2d 1205 (1998). In *State* v. *King*, supra, 249 Conn. 645, our Supreme Court articulated the standard of review of challenges to a trial court's evidentiary rulings. It stated that "[t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) Id., 669.

To determine whether the court abused its discretion when ruling to exclude the evidence, we must first ascertain if the court improperly held that the proffered evidence was not relevant.

"[C]hallenged [e]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence

is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason . . . ." (Citations omitted; internal quotation marks omitted.) *State v. Paris*, 63 Conn. App. 284, 292–93, 775 A.2d 994, cert. denied, 257 Conn. 909, 782 A.2d 135 (2001).

Prior to the start of the defendant's case, the state requested that the defendant make an offer of proof regarding the specifics of Peikes' proffered testimony. The defendant claimed that Peikes' testimony could contradict Knight's testimony about the "mood" of the interview. The defendant then argued that her "constitutional right to present a defense" entitled her to have Peikes testify regarding that topic. In response to the defendant's claim, the state declared that the defendant only offered Peikes' testimony for a "self-serving purpose, to get statements of the defendant and her views about the interview in, without testifying herself."

The court disagreed with the defendant's claim and noted that although Peikes' testimony would have been allowed as relevant if defense counsel intended it to "show that the statements [of the defendant] were not voluntarily made,"[3] it was not relevant in this case. It

---

[3] In support of its finding that Peikes' testimony was not relevant, the court stated: "We don't have a situation where the cops are trying to forcibly, one way or the other, by threat, extract a confession from someone who was denied the right to have an attorney there. This is the attorney who was there, and he's not saying, in fact, that she was—she exercised her right to have an attorney present with her while she was being questioned, and she, obviously, had the right, and he knew it, to stop the questioning at any time she chose to. So, the fact that she didn't choose to stop the questioning to me is not relevant. . . .

"Who sat where at the table to me is a collateral matter. Who crumbled paper, who tapped on the desk or didn't, who stood or sat, those are collateral matters, in my view. They might not always be collateral if the whole purpose of this is to show that the statements were not voluntarily made, but were

was not being offered for that purpose and did not relate to anything other than what the court deemed to be "collateral matters."[4]

We conclude that the court's inquiry into the relevance of Peikes' testimony was sufficient to support its pronouncement that the "circumstances of the interview"[5] were collateral matters. Furthermore, in her brief, the defendant admits that "Peikes' testimony may not have been crucial to the defense," but "it did at

made under some kind of threat, that would be something different, but I don't hear that here."

[4] During the defendant's offer of proof the following colloquy in relevant part occurred between the court and the parties' counsel:

"[Prosecutor]: Just because you have a right to go into something collateral on [cross-examination] does not mean that you have a right to rebut it if it's not something that's otherwise relevant.

"The Court: I agree. I think that the—I think that only aspects of Peikes' testimony that would conflict with what Detective Knight testified were some of the—what I might call circumstances of the interview. That is to say, who was sitting where, did Detective Knight or did he not tell the defendant that she could waive her [rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] and come down and talk to him without an attorney. . . .

"I really think these are, under these circumstances, are collateral matters, and I think the fact that the mood or the tone, as attorney Peikes said, changed toward the end of the interview to become more confrontational and more threatening. I don't really see the relevance of it. As the state points out, she was represented by an attorney and, presumably, if they didn't like the mood, they could have just got up and walked out. . . .

"The reason it has no relevance, among other things, is that if they didn't like the mood or the tone, they could have, they could have, canceled the interview at that point or if they did like it or didn't mind it, then what's relevant about it. . . .

"I think the point here is this. Knight testified as to certain admissions that the defendant made during the course of this interview. I didn't hear Peikes contradicting any of those admissions. I didn't hear Peikes saying that the statements she made were not voluntarily made. So, I really don't see what the relevance of this testimony is."

[5] The court defined the "circumstances of the interview" as "who was sitting where, did Detective Knight or did he not tell the defendant that she could waive her [rights under *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] and come down and talk to him without an attorney."

least slightly bolster the defendant's credibility, explained her confusion at the August 16, 1994 interview and refuted, to some extent, the testimony of Detective Knight." She also acknowledges that Peikes' testimony was being offered merely to impeach Knight's testimony regarding the "general atmosphere" of the interview.

"It is axiomatic that the defendant bears the burden of establishing the relevance of the proffered testimony and that unless a proper foundation is established, the evidence is not relevant." *State* v. *Madagoski*, 59 Conn. App. 394, 406, 757 A.2d 47 (2000), cert. denied, 255 Conn. 924, 767 A.2d 100 (2001). We find that the defendant's arguments failed to meet that burden and thus conclude that the court properly ruled Peikes' testimony to be irrelevant. The record fully supports the court's conclusion that the defendant did not meet her burden of establishing the relevance of Peikes' testimony and, accordingly, we conclude that the court did not abuse its discretion by excluding it. Thus, her constitutional right to present a defense under the sixth amendment to the United States constitution,[6] which is applicable to the states through the fourteenth amendment,[7] was not violated, nor was her right to due process under article first, § 8, of the constitution of Connecticut.[8]

---

[6] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[7] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[8] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf . . . and in all prosecutions . . . to a speedy, public trial by an impartial jury. No person shall be

## II

The defendant next claims that the court's instruction to the jury defining recklessness improperly expanded the charges against her, thereby violating her due process rights as guaranteed by the sixth and fourteenth amendments to the United States constitution. Specifically, the defendant takes issue with the court's definition in its jury charge of the standard of conduct of a reasonable person.

In its instruction to the jury, the court stated that "[t]he standard of conduct of a reasonable person may be defined as doing what a reasonably prudent person would do under the circumstances . . . or *declining to do what a reasonably prudent person would not do under the circumstances.*" (Emphasis added.) After the completion of the charge, the defendant objected to the latter part of the definition of the standard of conduct of a reasonable person. The court refused to give a curative instruction on the basis of its belief that the instruction was not misleading. We agree with the court.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is]

compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

whether it is reasonably possible that the jury [was] misled. . . .

"In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Hall*, supra, 66 Conn. App. 759.

In particular, the defendant argues that the jury charge, as given, could mislead the jury into believing that it could convict her of manslaughter in the first degree on the basis of recklessness if it found that she had failed to call for medical help in a timely manner. We disagree.

At no time during its charge to the jury did the court suggest that the defendant could be found guilty of manslaughter in the first degree if the jury found that she had failed to call emergency services promptly. In fact, the court never mentioned the delay at all in the jury charge. Further, the court directed the jury as to what evidence to consider under the standard of conduct of a reasonable person.

The court specifically instructed the jury: "In essence, with respect to this charge, the state presented evidence to show that the baby was shaken so hard that he died as a result and that it was the defendant who did this while the baby was in her custody. The state further claims that this conduct demonstrated extreme indifference to human life and that it was reckless; that is, that

the defendant consciously disregarded a substantial and unjustifiable risk that the baby would die from the shaking and that this was something that no reasonably prudent person would do. Further, the state claims that the defendant's shaking the baby was a gross deviation from the standard of conduct that a reasonably prudent person would follow under the circumstances."

Considering the jury charge as a whole, and the court's instruction as to what evidence the jury must consider, it is not reasonably possible that the jury understood the charge to have the meaning proposed by the defendant. Thus, we conclude that the court did not expand the charges against the defendant and that her constitutional right to a fair trial was not violated.

The judgment is affirmed.

In this opinion the other judges concurred.