## DONNETTE GRANT *v.* COMMISSIONER OF CORRECTION
## (AC 30112)

Bishop, DiPentima and Tyma, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 4—officially released May 25, 2010

*Mary H. Trainer*, special public defender, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Dennis J. O'Connor*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, J. The petitioner, Donnette Grant, appeals from the judgment of the habeas court denying her petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) dismissed count two of the habeas petition for failure to state a cause of action and (2) denied her claim of

ineffective assistance of counsel. We affirm the judgment of the habeas court.

The facts surrounding the underlying conviction were set forth in the decision of this court disposing of the petitioner's criminal appeal. "Lennox Walker, the victim's father, arranged for the [petitioner] to care for the victim, Lamar Walker, who was four months old. Kerry Ann Douglas, the victim's mother, took the victim to the [petitioner's] apartment on the morning of August 12, 1994. Approximately two hours after the victim was left in the [petitioner's] care, the victim required hospitalization because he was not breathing. At 11:18 a.m., a police certified dispatcher received a 911 call from 887 Asylum Avenue in Hartford, the location of the [petitioner's] apartment. Emergency personnel responded and found that the victim was not breathing, had no pulse, and was cold, pale and blue from lack of oxygen in his blood. The paramedics transported the victim to Saint Francis Hospital and Medical Center. Because of the victim's special needs at that time, he was taken by Life Star helicopter to Hartford Hospital, which has an intensive care unit specially designed for very young children. Medical examination of the victim revealed that he had sustained the following injuries: Severe swelling of the brain, bleeding in the head, retinal hemorrhage and fractures in five bones. On August 14, 1994, the victim died at the hospital from the injuries he had sustained." *State* v. *Grant*, 68 Conn. App. 351, 352–53, 789 A.2d 1135 (2002).

On December 13, 1999, the petitioner was charged with one count each of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and (3), risk of injury to a child in violation of General Statutes § 53-21 and tampering with a witness in violation of General Statutes § 53a-151. Following a trial, a jury found the petitioner guilty of manslaughter in the first degree in violation of § 53a-55 (a) (3) and risk of injury

to a child in violation of § 53-21. *State* v. *Grant*, supra, 68 Conn. App. 351. On February 28, 2000, the court imposed a total effective sentence of thirty years incarceration, suspended after twenty years, with five years of probation. The petitioner appealed from the judgment of conviction to this court, and we affirmed the judgment of the trial court. Id. On October 29, 2003, the petitioner filed a pro se petition for a writ of habeas corpus, which was amended twice, most recently through counsel on April 2, 2007. Only two counts of the second amended petition are subjects of this appeal: count two, alleging that postjudgment medical and scientific evidence contradicted the state's expert opinion, and count three, alleging ineffective assistance of her trial counsel, Sara Bernstein. The court dismissed count two during the habeas trial and, by memorandum of decision dated June 4, 2008, denied the habeas petition as to count three.[1] The court granted the petition for certification to appeal from the judgment denying the habeas petition. This appeal followed. Additional facts will be set forth as necessary.

We first set forth our standard of review for a denial of a petition for a writ of habeas corpus. "The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it

---

[1] As to count one, which alleged "unsubstantiated expert testimony," the habeas court determined that the petitioner was procedurally defaulted. The petitioner does not challenge this on appeal.

. . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 838, 947 A.2d 7, cert. denied, 288 Conn. 908, 953 A.2d 652 (2008).

## I

The petitioner first claims that the court improperly dismissed count two of the habeas petition for failure to state a cause of action. Specifically, the petitioner argues that because newly discovered medical and scientific evidence "undermines the validity and viability of the state's theory of criminal liability," she should be granted a new trial. We do not agree.

In the second count of her amended habeas petition, the petitioner alleged that studies published after her conviction contain medical and scientific evidence on shaken baby syndrome that contradict the opinions proffered at trial by the state's expert witness. Prior to trial, the respondent, the commissioner of correction, moved to dismiss this count on the ground that the petitioner had not pleaded actual innocence. On April 13, 2007, the court, *Fuger, J.*, denied the motion without a memorandum of decision. On October 24, 2007, at the close of the petitioner's case-in-chief, the respondent orally moved for a directed verdict on count two.[2] The respondent argued that the petitioner had not offered any postjudgment medical or scientific evidence that contradicted the evidence that the state put forth in her criminal trial and that the petitioner had not made a claim of actual innocence. Thereafter, the court,

---

[2] We note that, as a habeas trial is without a jury, the motion should not have been characterized as a motion for a directed verdict but would be more accurately presented as a motion for dismissal for failure to make out a prima facie case under Practice Book § 15-8.

*Swords, J.*, dismissed count two, and stated in the memorandum of decision: "The court dismissed count two after the petitioner's case-in-chief because the count failed to state a cause of action. Count two is captioned '[p]ost-judgment medical and scientific evidence contradicts the state's 'expert' opinions.' At best, this claim merely draws attention to the fact that medical and scientific reasoning evolve over time, a not too novel notion. This claim is not, however, a cognizable habeas corpus claim. Thus, the discussion [in the court's decision] is limited to counts one and three."

Practice Book § 23-29 provides in relevant part that "[t]he judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted [or] (5) any other legally sufficient ground for dismissal of the petition exists." A petition for a writ of habeas corpus must set forth specific grounds for the issuance of the writ. Practice Book § 23-22 (1) specifically provides that the petition shall state "the specific facts upon which each specific claim of illegal confinement is based and the relief requested . . . ." See *Fernandez* v. *Commissioner of Correction*, 86 Conn. App. 42, 49, 859 A.2d 948 (2004) ("The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." [Internal quotation marks omitted.]). "While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims

not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Citations omitted; internal quotation marks omitted.) *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 181, 774 A.2d 148 (2001).

Count two of the petitioner's amended petition for a writ of habeas corpus includes no allegation of actual innocence on which to premise her claims regarding newly available postjudgment scientific evidence. It simply alleges: "Notwithstanding whatever level of acceptance [shaken baby syndrome] may have enjoyed within the medical and scientific community at the time of trial, substantive independent scholarship has been produced since the trial court's judgment that undermines the validity and viability of the theory of criminal liability, as adduced and argued by the [s]tate." In her argument before this court, the petitioner claims that count two states a cause of action of actual innocence.[3] From our review of the record, we conclude that it was never made clear to the habeas court that the petitioner was proceeding on an actual innocence claim.[4] Id. Instead, the petitioner proceeded under the general theory that the evidence presented at the habeas trial showed that the state's evidence related to shaken baby syndrome that was presented at the criminal trial was not valid. The ambiguous pleadings that do not allege actual innocence and the failure of the petitioner to advise the court of her theory during the habeas trial

[3] We note that in her first amended petition, the petitioner did expressly allege a claim of actual innocence but that that claim is not contained in the operative petition.

[4] In fact, during the respondent's argument on her motion for a directed verdict, she argued: "If there's a claim of actual innocence based on these studies . . . they're not stated here." The petitioner's only response was that "[t]he court ultimately may have to make a . . . legal determination as to count two, but it was an evidentiary claim made by [the] petitioner with respect to the motion we believe that's not satisfied."

provide a sufficient legal basis to affirm the court's dismissal of count two of the habeas petition.

The petitioner contends that we should *interpret* her claim as one of actual innocence, even though it was not stated as such, and refers to *Summerville* v. *Warden*, 229 Conn. 397, 641 A.2d 1356 (1994), in support of that contention. That reliance is misplaced. *Summerville* is factually distinguishable from this case because in *Summerville*, it was undisputed that the petitioner was making a claim of actual innocence.[5] In that case, the petitioner claimed that he was entitled by way of a writ of habeas corpus to a new trial "because the evidence at his criminal trial was medically unreliable." Id., 420. The court in *Summerville* clearly stated that "[t]he petitioner's claim is, as he states, one of 'factual innocence.' On the basis of . . . testimony that the cause of death of the victim was not asphyxiation resulting from manual strangulation, but acute cocaine intoxication, the petitioner claims that he is the victim of a miscarriage of justice because 'no crime was committed.' " Id. Because the petitioner here never presented a claim of actual innocence at the time of trial, *Summerville* provides no basis for the viability of count two.[6]

---

[5] The court in *Summerville* found that the petitioner's evidence was insufficient for the habeas court to evaluate it for the purpose of determining whether, taken together with and in light of the trial evidence, the writ of habeas corpus should issue on the ground that the petitioner was actually innocent and reversed the judgment of the Appellate Court and remanded the case with direction to affirm the habeas court's dismissal of the petition. *Summerville* v. *Warden*, supra, 229 Conn. 400, 440. The court, however, did consider this issue on its merits. See id., 418.

[6] Moreover, we note that at the habeas trial, the petitioner called two expert witnesses, Chris Van Ee, a biomedical engineer, and Roger McLendon, a physician who was qualified as an expert in neuropathology and anatomic pathology, to testify. Although the petitioner claims that Van Ee and McLendon presented new evidence, they did not and simply based their opinions on studies that were published and research that was conducted both before and after the judgment of conviction. Neither expert introduced any medical or scientific evidence that was substantially different from that available during the trial, and neither made a clear connection illustrating the differ-

## II

The petitioner next claims that the court improperly denied her claim as to count three, which alleged ineffective assistance of counsel. Specifically, she claims that the court improperly found that Bernstein adequately prepared for trial and conducted sufficient investigation into potential defenses and that she adequately challenged the state's expert witnesses on the scientific fundamentals of shaken baby syndrome. We do not agree.

Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. "In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 124–25, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009). Furthermore, "[i]n a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done

ence between the research available before 2000 and the research available since that date. The testimony at the habeas trial simply extended the battle of the experts that existed at the criminal trial. Therefore, even if we were to examine this claim as one of actual innocence as in *Summerville*, the facts of this case do not constitute a situation in which the petitioner would be entitled to a new trial. The testimony of Van Ee and McClendon at the habeas trial, like the expert testimony in *Summerville*, does not rise to the level required to reverse the habeas court's judgment.

is not met by speculation . . . but by demonstrable realities." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 599, 940 A.2d 789 (2008).

We note that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 512–13, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

The court heard testimony from several witnesses, including Bernstein and attorney Hope Seeley, who was qualified as an expert witness in criminal defense practice. The court also had before it the transcripts from the criminal trial. The court made the following factual findings that relate to Bernstein's preparation and investigation of the case. Bernstein reviewed the state's entire file and obtained copies of police reports and witnesses' statements. She also reviewed the files of and consulted with three attorneys who had previously represented the petitioner. Bernstein had recently acted

as co-counsel in a shaken baby case, during which time she had reviewed scientific literature and consulted with numerous experts on the issue. She also consulted with two attorneys who were familiar with shaken baby syndrome cases in conjunction with the petitioner's case. Further, Bernstein sent her investigator to interview the state's witnesses.

Assistant public defender Karen Goodrow, who had previously represented the petitioner, had hired Mark Taff, a former medical examiner for the states of New York and New Jersey, to consult on the petitioner's case. Bernstein was familiar with Taff's background and experience and with the fact that he had testified in a number of cases and was highly regarded. Bernstein sent Taff a copy of the reports and the X ray films in the case. Taff informed Bernstein that in general he agreed with the state's experts that the injuries could have resulted from an impact or from one or more shakes. Taff further told Bernstein that the usual course of this type of brain injury would be instantaneous unconsciousness such that the victim would not be able to cry vigorously or to feed, and he indicated that in some cases the child might be semiconscious for a period and put the outer limit of observable symptoms at twenty-four hours. On the basis of these conversations with Taff, Bernstein made the decision not to call him to testify for the petitioner. Bernstein reasoned that although some of Taff's testimony might help the defense case, overall his corroboration of the conclusions of the state's experts would be more harmful. Additionally, because both Lewis and the petitioner claimed that the victim had been crying while in the petitioner's care, Taff's opinion that the victim likely would not cry vigorously after receiving injury supported the state's theory as to the timing of the injury and therefore the identity of the perpetrator.

Bernstein later consulted with Gordon Sze, chief of neuroradiology at the Yale School of Medicine. Sze, after reviewing reports, X rays and computerized tomography (CT) scans, told Bernstein that although he believed the injuries to the victim were caused by shaking, in his opinion, those injuries were inflicted no less than twelve hours before a CT scan was taken and that the injuries could have occurred as much as eighteen to twenty-four hours before the scans. On the basis of this opinion, Bernstein decided to call Sze to testify and to focus solely on the timing of the injuries. Bernstein believed that other state's evidence could corroborate Sze's testimony in that the petitioner was on record as recommending to Douglas that Douglas take the victim to the hospital, and the hospital record showed Walker was upset because Douglas did not take the victim to a doctor.

The court further found, as to the claims that Bernstein failed to challenge the state's expert witnesses adequately on the scientific fundamentals of shaken baby syndrome, that "[e]ven if Bernstein had educated herself and used such 'evidence' in her cross-examination of the state's witnesses, it is unclear what effect that would have had. As stated previously, none of the state's expert witnesses limited their opinion as to the cause of the victim's injuries to shaking alone. Rather, each state's witness gave several probable causes for the injuries, including a fall, an object striking the head or shaking. Moreover . . . in 1998, [Ann-Christine Duhaime, a physician and researcher who has published several articles in medical journals on shaken baby syndrome] conceded that the issue of whether shaking alone is sufficient was still not decided. Additionally, Duhaime's 1992 study found that retinal hemorrhages are rarely found in accidental head injuries but are commonly found in inflicted injuries. . . .

"[Also] [a]ccording to the petitioner, Bernstein used Taff, but his specialty was not shaken baby syndrome; instead, Bernstein should have used a pathologist with expertise in shaken baby syndrome, a neurosurgeon and a biomechanical engineer. . . . [T]he court emphasizes that in the habeas case, the petitioner did not present a pathologist with expertise in shaken baby syndrome ([the specialty of one of the petitioner's expert witnesses, Roger McLendon] as a pathologist is brain tumors) or present a neurosurgeon at all. Thus, the petitioner has failed to prove that a pathologist with expertise in shaken baby syndrome or a neurosurgeon would have contradicted the state's expert witnesses."

In its memorandum of decision, which included a thorough review of the evidence, the court found that the claim that Bernstein provided ineffective assistance in preparing for trial and adequately investigating defenses was without merit and that Bernstein's defense strategy was reasonable and well implemented. It further concluded that as to the claim that Bernstein failed to challenge adequately the state's witnesses on the shaken baby syndrome, the petitioner had failed to prove prejudice from any deficient performance by Bernstein. On the basis of our review of the record, we conclude that the court properly determined that trial counsel's strategy was reasonable under the circumstances and that the petitioner had failed to prove prejudice from any failure to challenge the state's theory of shaken baby syndrome.

The judgment is affirmed.

In this opinion the other judges concurred.