******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LARRY DAVIS *v.* COMMISSIONER OF CORRECTION
(AC 36364)

Beach, Mullins and Sullivan, Js.

*Argued June 3—officially released October 13, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Lisa J. Steele*, assigned counsel, for the appellant
(petitioner).

*Laurie N. Feldman*, special deputy assistant state's
attorney, with whom, on the brief, were *Michael Dear-ington*, state's attorney, and *David Clifton*, assistant
state's attorney, for the appellee (respondent).

*Opinion*

MULLINS, J. The petitioner, Larry Davis, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly concluded that his trial counsel did not render ineffective assistance by failing to educate himself sufficiently about eyewitness identification research. We affirm the judgment of the court.

In 2004, the petitioner was tried on charges arising from three unrelated incidents, which were set forth in three separate informations. He was convicted of the charges set forth in two of those informations.[2] "The first information . . . pertained to a shooting that occurred on September 28, 1998, in a parking lot located near Yale-New Haven Hospital, during which Victoria Standberry was wounded severely . . . . In connection with that incident, the [petitioner] was charged with assault in the first degree in violation of General Statutes §§ 53a-8 (a) and 53a-59 (a) (5), carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35, criminal possession of a firearm in violation of General Statutes (Rev. to 1997) § 53a-217, failure to appear in the first degree in violation of General Statutes § 53a-172 and, in a part B information, being a persistent dangerous felony offender in violation of General Statutes (Rev. to 1997) § 53a–40 (a) and (f). The second information . . . pertained to an armed robbery of Lenwood E. Smith, Jr., that occurred on January 25, 2002 . . . . In connection with that incident, the [petitioner] was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3) and, in a part B information, being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) and (h)." *State* v. *Davis*, 286 Conn. 17, 20–21, 942 A.2d 373 (2008).

Our Supreme Court recounted the following facts underlying the first information. "In September, 1998, the first victim, [Standberry], had been introduced to the [petitioner] by her best friend, Taraneisha Brown. Brown and the [petitioner] were involved in a personal relationship. On September 27, 1998, Standberry asked Brown for payment toward a substantial debt owed by Brown. Brown replied that she would return Standberry's telephone call but never did.

"The next day, the [petitioner] received a telephone call in the afternoon and left work early. On the evening of September 28, 1998, Standberry parked her vehicle in the Pro Park parking lot located near Yale-New Haven Hospital (hospital), where she was employed in the food and nutrition department. Brown knew that Standberry parked in that particular lot when working at the hospital. Standberry left the hospital carrying a plate of food

at approximately 9:25 p.m. and went to her vehicle. As she was placing the food in her vehicle, she observed an individual approach. She attempted to close her door, but it was forced open. The [petitioner] came up to Standberry, said 'revenge,' and shot her several times before slowly walking away. . . . Despite severe physical injuries, Standberry was able to drive her vehicle, with the driver side door open and her injured leg hanging outside of the vehicle, to the entrance of the children's hospital. An ambulance was summoned and Standberry was rushed to the emergency room, where she underwent several surgeries. Standberry testified that a cadaver bone was inserted in her shoulder to repair bone loss and nerve damage, and that two bullets remain in her body, one in her hip and one in her knee." (Citation omitted.) Id., 24.

Our Supreme Court recounted the following facts underlying the second information. "The second victim, [Smith], was at a club in New Haven on January 25, 2002. After speaking with the [petitioner] for approximately twenty minutes, he left at 2 a.m. The [petitioner] stopped Smith in the parking lot and asked for a ride to Sheffield Street. Smith agreed, and the [petitioner] and his friend entered Smith's vehicle. After arriving, the [petitioner] asked Smith to drive them to Carmel Street, where an individual known as 'Mizzy' owed him money. After Smith drove to the bottom of a hill, the [petitioner] took out a gun and threatened him. Smith continued on to Carmel Street and parked. The [petitioner] placed his gun against Smith's head and demanded money. Smith gave the [petitioner] his wallet and told him that he could get more from an automated teller machine. Smith drove to a nearby bank and, after parking, fled to a nearby gas station. Smith telephoned the police and showed them the bank parking lot where he had left his vehicle. The police recovered Smith's vehicle approximately one week later." Id., 25.

The petitioner was convicted of every charge set forth in both informations. Id., 22. "In a subsequent trial on the accompanying part B informations, the jury found the [petitioner] guilty of two counts of being a persistent dangerous felony offender. The trial court rendered judgment in accordance with the jury's verdict, and imposed a total effective sentence of eighty years imprisonment." Id., 22–23. We affirmed the petitioner's convictions; see *State* v. *Davis*, 98 Conn. App. 608, 638, 911 A.2d 753 (2006); and our Supreme Court then affirmed the judgment of this court. See *State* v. *Davis*, supra, 286 Conn. 38.

Following the affirmance of his conviction, the petitioner filed a petition for a writ of habeas corpus. In the operative second revised and first amended petition, the petitioner pleaded, inter alia, that his trial counsel performed deficiently because he (1) "failed to retain an expert on eyewitness identification to analyze the

statements and circumstances, and review the identification issues of the identifications," (2) "failed to challenge the photo array identification methods employed to identify [the] [p]etitioner,"[3] and (3) "did not himself or through an expert make clear" that certain factors could impact the reliability of the identifications of the perpetrator.[4]

The habeas court, *Cobb, J.*, held a hearing on the petition for a writ of habeas corpus after which, through a memorandum of decision, it denied the petition. In its decision, the court construed the petitioner's claim to be one alleging that his trial counsel was "ineffective for failing to retain and use an expert on eyewitness identification." In other words, the court interpreted the petitioner's claim as one in which counsel was ineffective for failing to retain and present an expert witness at trial. The court rejected this claim.

In particular, the court observed that "[a]t the time of the petitioner's trial in 2004, experts on eyewitness identifications were not generally admissible at trial, and in fact, were disfavored by our courts." The habeas court concluded: "The petitioner ha[d] not proved that trial counsel's failure to present an expert witness at trial was deficient in view of the law on the admissibility of expert testimony in 2004. In addition, given that the law disfavored expert testimony at the time of the petitioner's trial, the petitioner ha[d] not proved that had trial counsel attempted to call an expert witness at trial, the court was likely to have admitted such testimony. Furthermore, given the circumstances of the identifications in this case, and that the victims were familiar with the petitioner,[5] the petitioner ha[d] not proved that such testimony would have altered the result of the trial." (Footnote added.) This appeal followed.

On appeal, the petitioner claims that his "trial counsel provided ineffective assistance . . . when he failed to educate himself about eyewitness identification research." According to the petitioner, "without consulting an expert, or otherwise educating himself about eyewitness research, [his counsel] was ill-prepared to provide a framework for the jury to understand the flawed eyewitness identifications . . . through cross-examination and summation." The state contends that "[t]hese . . . claims are not reviewable because they were not clearly [pleaded] in the habeas petition" and "the habeas court did not rule on them." We agree with the state.

Before we turn to the petitioner's claim, we set forth the legal principles relevant to this case. "It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a [petitioner] may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a [petitioner] to recover is limited to the

allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Citation omitted; internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 131 Conn. App. 820, 822, 29 A.3d 171 (2011), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012).

Here, in his second revised and first amended petition, the petitioner included no distinct allegation that his trial counsel provided ineffective assistance by failing to educate himself about eyewitness identification research by consulting with an expert. His allegations, as alleged in the operative petition, were that his trial counsel's performance was deficient because he (1) "failed to retain an expert on eyewitness identification to analyze the statements and circumstances, and review the identification issues . . . [even] though the testimony of the eyewitnesses was the only direct evidence of alleged wrongdoing by [the] [p]etitioner"; (2) "did not himself or through an expert make clear" factors that lessen the reliability of eyewitness identifications; and (3) "failed to [properly] challenge the photo array identification methods employed to identify [the] [p]etitioner . . . ." The petitioner claims that these allegations included both a claim that trial counsel failed to call an expert witness at the criminal trial[6] and a separate and distinct claim that trial counsel failed to sufficiently educate himself regarding eyewitness identification, including not consulting with an expert. A plain reading of these allegations demonstrates, however, that none of them states clearly that his counsel was ineffective for failing to consult with an expert in order to educate himself on eyewitness identification.

Indeed, the allegation regarding counsel's "fail[ure] to retain an expert on eyewitness identification" is ambiguous at best. It is unclear whether this allegation means that the petitioner's trial counsel failed to retain an identification expert for consultation to educate himself, or, as the habeas court determined, failed to retain an expert to use as a witness at trial, or both. The petitioner never made it clear to the habeas court that this allegation was, in actuality, two different claims, and that one of those claims was a failure of trial counsel to self-educate regarding identification issues, including consultation with an expert. See *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 301–302, 995 A.2d 641 ("[t]he ambiguous pleadings . . . and the fail-

ure of the petitioner to advise the court of her theory during the habeas trial provide a sufficient legal basis to affirm the court's dismissal of [the pertinent] count . . . of the habeas petition"), cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010). Therefore, the petitioner's claim regarding counsel's self-education through consultation with an expert certainly was not distinctly raised in this allegation of the petition. See *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 126, 111 A.3d 829 (2015) ("[a]ppellate review of newly articulated claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge" [internal quotation marks omitted]).

We similarly are unconvinced that the petitioner's allegations that his trial counsel "did not himself or through an expert make clear" issues regarding identification or that his trial counsel "failed to [properly] challenge the photo array identification methods employed to identify [the] [p]etitioner . . . by Standberry . . . and Smith" distinctly raised a claim of failure of his trial counsel to educate himself regarding eyewitness identification issues, including consulting with an expert. Significantly, both of those allegations were made in subsection F (iii) of the habeas petition. This subsection most reasonably could be interpreted to address only the claim pertaining to his trial counsel's failure to use expert testimony at trial. For example, after making these allegations, the petitioner concluded the subsection with the following: "[Trial counsel] failed to employ an expert *to testify* as to . . . identification issues" relating to the photographic array identification in the Standberry case. (Emphasis added.)

In fact, at no point in this subsection, or elsewhere in the petition, did the petitioner also allege that his counsel failed to educate himself on identification issues, including consultation with an expert, nor that such a failure amounted to deficient performance. Both allegations, thus, appear to be part of, and support for, his claim regarding the failure to call an expert witness at trial. Even more to the point, the petitioner never made it clear to the habeas court that these two allegations were in fact raising two different claims of ineffective assistance: one relating to the failure of his counsel to call an expert at trial, and another pertaining to his counsel's failure to educate himself.

In sum, the petitioner did not distinctly allege in his habeas petition a failure of trial counsel to self-educate by consulting with an expert. Critically, the petitioner never advised the habeas court that such a claim was embedded within his other allegations, nor did he challenge the court's understanding of his claim solely as being a failure to call an identification expert as a witness at trial. See *Grant* v. *Commissioner of Correction*, supra, 121 Conn. App. 301–302. Put simply, the petitioner's claim raised on appeal was not distinctly raised

before the habeas court. As such, that claim is unreviewable.[7]

Furthermore, the habeas court never considered or ruled on a distinct claim that trial counsel was ineffective for failing to consult with an expert witness. Rather, the court construed the petitioner's claim as alleging that counsel was ineffective for "failing to *retain and use* an expert on eyewitness identification"; (emphasis added); and determined that the failure of the petitioner's counsel to call such an expert to testify at trial did not amount to ineffective assistance. The court noted that the law at the time of the 2004 criminal trial disfavored the admissibility of expert testimony on eyewitness identification[8] and observed that it was unlikely that such testimony would have been permitted at the petitioner's criminal trial. The habeas court determined that the petitioner's trial counsel "did not retain or use such an expert because he did not think it would be persuasive, *even if admitted by the trial court in its discretion*, and instead used cross-examination to underscore inconsistencies in eyewitness statements and testimony." (Emphasis added.) In addition, the court concluded that, because Standberry and Smith were familiar with the petitioner prior to the respective crimes, "the petitioner ha[d] not proved that *such testimony* would have altered the result of the trial." (Emphasis added.) The court, thus, concluded that the failure of the petitioner's counsel to use the testimony of an identification expert at trial did not amount to ineffective assistance.

Following the issuance of the memorandum of decision, the petitioner made no effort to alert the court that it may have misconstrued any of his allegations of ineffective assistance of his trial counsel. More specifically, the petitioner never informed the court that his current claim regarding the failure to self-educate was subsumed within other allegations of his petition. And, despite the fact that he now claims on appeal that he alleged this claim in his petition, our reading of the habeas court's decision shows that it never ruled on this distinct claim.[9] Accordingly, to the extent that the habeas court construed the petitioner's allegations in a way that the petitioner deems inaccurate or incomplete, the failure of the petitioner to clarify for the habeas court his allegations is fatal to his claim. See id., 301–302.

The habeas court construed the petition as alleging that the failure of the petitioner's trial counsel to use the testimony of an identification expert amounted to deficient performance, and it rejected that claim. It never ruled on the merits of the claim the petitioner raises in this appeal, namely, that his trial counsel's performance was deficient because he failed to educate himself sufficiently about eyewitness identification research, including not consulting with an expert. We,

therefore, are unable to review the merits of the petitioner's claim. See *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705 ("[a] reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court"), cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted the petitioner's petition for certification to appeal.

[2] The third information pertained to an armed robbery of Leonard Hughes that was alleged to have occurred on March 13, 2002. The petitioner was acquitted of the charges in that information.

[3] In his claim pertaining to photographic array identifications, the petitioner alleged: "(1) the photographs were shown to . . . Standberry [and] Smith . . . by the police simultaneously rather than sequentially; (2) after advising . . . Standberry [and] Smith . . . that the perpetrator may or may not be in the photograph array, the police provided . . . Standberry [and] Smith . . . with a form that did not contain a line on which the witness could indicate that the array does not include the perpetrator; and (3) the police did not use a 'double-blind' identification procedure, that is, one in which the person administering the procedure does not know the identity of the suspect . . . ."

[4] The petitioner alleged that his trial counsel did not sufficiently challenge the identification of the perpetrator by Standberry and Smith because he "did not himself or through an expert make clear the following: (1) the perpetrator's use of a disguise can impair the ability of . . . Standberry to make an accurate identification (disguise effect); (2) under the principle of 'unconscious transference,' a witness is more likely to identify a person as the perpetrator if that person looks familiar to the witness; (3) a witness tends to focus on the perpetrator's weapon instead of on the perpetrator, thereby reducing the likelihood of an accurate identification (weapons use effect); (4) there is little or no correlation between the reliability of an identification and the witness' confidence in the identification; (5) a witness who is under stress while observing the commission of the crime is less likely to make an accurate identification of the perpetrator; and (6) witness collaboration can adversely affect the reliability of an identification."

[5] In addition to adopting the facts outlined by the Supreme Court, the habeas court found the following additional relevant facts. Both Standberry and Smith "knew or were familiar with the petitioner at the time of the incidents. . . . Standberry had met the petitioner at her friend Taraneisha Brown's house a week or two before the shooting and spoke with him for five to ten minutes. . . . Smith met the petitioner at a club where he thought the petitioner was familiar and then spoke with him for approximately twenty minutes before he and the petitioner left the club and got in Smith's car."

[6] The state asserts that the petitioner has abandoned any claim that his trial counsel rendered ineffective assistance in failing to call an expert witness to testify at the criminal trial. We agree that such a claim is not briefed or contained in the petitioner's statement of the issues.

[7] The petitioner claims that the arguments he made in his posttrial brief to the habeas court demonstrate that he had raised the claim that his counsel's performance was deficient because he failed to consult with an identification expert. We disagree. Claims raised for the first time in posttrial briefs are not reviewable by the habeas court or by this court on appeal. See *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 181, 774 A.2d 148 (2001) (no review of claim raised for first time in posttrial brief); *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 406–407, 726 A.2d 657 (finding that habeas court improperly reviewed claim raised for first time in posttrial brief), cert. denied, 249 Conn. 920, 733 A.2d 233 (1999).

[8] Although at the time of the petitioner's criminal trial Connecticut did not have a "per se bar to the admission of expert testimony on the reliability of eyewitness identifications . . . [at that time] courts consistently [had] barred the use of such expert testimony . . . reasoning [that] beause . . . the substance of that testimony is known to the average juror, the testimony would encroach unduly on the jury's responsibility to determine what weight to give the eyewitness testimony, and other means, including cross-examination and closing argument of counsel, are sufficient to apprise jurors of any

potential weakness in the particular eyewitness identification at issue." *State* v. *Outing*, 298 Conn. 34, 98–99, 3 A.3d 1 (2010) (*Palmer, J.*, concurring), cert. denied, 562 U.S. 1225, 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011); see also *State* v. *Guilbert*, 306 Conn. 218, 232–33, 49 A.3d 705 (2012) (discussing history and reasoning behind routine exclusion of eyewitness identification expert testimony by Connecticut courts).

[9] We note that the petitioner did file a motion for articulation in which he "request[ed] that the habeas court indicate whether it considered the ineffectiveness of his appellate counsel to challenge *State* v. *King*, [187 Conn. 292, 445 A.2d 901 (1982), overruled by *State* v. *Payne*, 303 Conn. 538, 541–42, 34 A.3d 370 (2012)] and, if so, the court's ruling on said issue, or, if not, the reason why the court did not consider this issue." The petitioner, thus, was fully aware that mechanisms exist by which he could have attempted to clarify any ambiguity in the habeas court's ruling.